UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TONY WONG,

                    Plaintiff,

v.                                                          Case No. 14 Civ. 3044 (VSB)

BARCLAYS BANK PLC,

                    Defendant.

## **BARCLAYS BANK PLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION ......................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

I.      Barclays Purchased EquiFirst, a Subprime Mortgage Lender ................................. 1

II.     Plaintiff Refinanced His Home with an EquiFirst Mortgage in 2007 ................... 2

III.    Plaintiff Defaulted on His Mortgage and Was Subject to Foreclosure in 2008...... 3

LEGAL STANDARD..................................................................................................................... 3

ARGUMENT .................................................................................................................................. 5

I.      APPLICABLE STATUTES OF LIMITATIONS BAR PLAINTIFF'S CLAIMS .................................................................................................................. 5

      A.     Plaintiff's Claims Accrued When He Closed on His Loan, or, at the Latest, When He Defaulted on His Loan .................................................. 5

      B.     The Limitations Period Applicable to Each Claim Expired Years Before Plaintiff Filed the Complaint.......................................................... 6

      C.     No Continuing Violation Delayed the Accrual of Plaintiff's Claims ......... 7

      D.     Plaintiff's Claims Are Not Timely Under the Discovery Rule.................. 8

            1.     The Discovery Rule Does Not Apply to Any of Plaintiff's Claims ........................................................................................ 8

            2.     Even If the Discovery Rule Applied to Plaintiff's Claims, It Would Not Render His Complaint Timely .................................. 11

II.     PLAINTIFF LACKS STANDING TO ASSERT CLAIMS AGAINST BARCLAYS ........................................................................................................ 13

III.    THE COMPLAINT FAILS TO STATE A CLAIM............................................. 16

      A.     Plaintiff Does Not Satisfy the Elements of Any of the Statutes at Issue .. 16

            1.     Plaintiff Has Not Sufficiently Alleged a Policy of Barclays that Is Prohibited under FHA, ECOA, or the New York Statutes ....... 16

2.    Plaintiff Has Failed to Sufficiently Allege that Barclays Is Liable as an Alter Ego of Any Other Entity ................................. 20

B.    Section 805 of the FHA and ECOA Do Not Permit Disparate Impact Claims ..................................................................................................... 23

IV.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE OR DECLARATORY RELIEF ............................................................................................................ 25

CONCLUSION ...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Adkins v. Morgan Stanley*,
   No. 12 CV 7667, 2013 WL 3835198 (S.D.N.Y. Jul. 25, 2013)...................................... passim

*Alexander v. Sandoval*,
   532 U.S. 275 (2001).................................................................................................24

*Allen v. Wright*,
   468 U.S. 737 (1984).................................................................................................14

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)......................................................................................13

*Archer v. Nissan Motor Acceptance Corp.*,
   550 F.3d 506 (5th Cir. 2008) ....................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................... 3-4, 18, 23

*Atherton v. FDIC*,
   519 U.S. 213 (1997).................................................................................................21

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..........................................................................................2

*Bennett v. Spear*,
   520 U.S. 154 (1997).................................................................................................14

*Benzemann v. Citibank N.A.*,
   No. 12 Civ. 9145, 2014 WL 2933140 (S.D.N.Y. June 27, 2014)...................................8, 9, 10

*Blue Whale Corp. v. Grand China Shipping Development Co.*,
   722 F.3d 488 (2d Cir. 2013)......................................................................................21

*Boykin v. KeyCorp*,
   521 F.3d 202 (2d Cir. 2008).......................................................................................23

*Carver v. City of New York*,
   621 F.3d 221 (2d Cir. 2010)......................................................................................14

*Chambers v. Time Warner Inc.*,
   282 F.3d 147 (2d Cir. 2002).........................................................................................4

*Chin v. Port Auth. of N.Y. & N.J.*,
   685 F.3d 135 (2d Cir. 2012).........................................................................................7

*City of Memphis v. Wells Fargo Bank*,
No. 09-2857, 2011 WL 1706756 (W.D. Tenn. May 4, 2011) .................................... 18-19, 20

*Claybrooks v. Primus Auto. Fin. Servs., Inc.*,
363 F. Supp. 2d 969 (M.D. Tenn. 2005) ................................................................. 10

*Clement v. United Homes*,
914 F. Supp. 2d at 367 ........................................................................................... 12

*Corcoran v. N.Y. Power Auth.*,
202 F.3d 530 (2d Cir. 1999) .................................................................................. 11

*Coulibaly v. J.P. Morgan Chase Bank, N.A.*,
No. 10-cv-3517, 2011 WL 3476994 (D. Md. Aug. 8, 2011) ............................... 9, 13

*De Jesus v. Sears, Roebuck & Co., Inc.*,
87 F.3d 65, 70 (2d Cir. 1996) ................................................................................ 22

*Dekalb Cnty. v. HSBC N. Am. Holdings, Inc.*,
No. 12-cv-03640, 2013 WL 7874104 (N.D. Ga. Sept. 25, 2013) .......................... 19

*Diaz v. Bank of Am. Home Loan Servicing*,
No. 09-cv-9286, 2010 WL 5313417 (C.D. Cal. Dec. 16, 2010) ............................ 20

*Duncan v. N.Y. City Transit Auth.*,
127 F. Supp. 2d 354 (E.D.N.Y. 2001) ................................................................... 16

*Enter. Mortg. Acceptance Co., LLC, Secs. Litig. v. Enter. Mortg. Acceptance Co.*,
391 F.3d 401 (2d Cir. 2004) .................................................................................... 6

*Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y.*,
316 F.3d 357 (2d Cir. 2003) ................................................................................... 16

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*,
552 F. App'x 13 (2d Cir. 2014) ............................................................................. 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) ............................................................................................... 25

*Gaidon v. Guardian Life Ins. Co. of Am.*,
96 N.Y.2d 201 (2001) .............................................................................................. 6

*Garcia v. Brockway*,
526 F.3d 456 (9th Cir. 2008) ................................................................................... 9

*Garcia v. Johanns*,
444 F.3d 625 (D.C. Cir. 2006) ............................................................................... 24

*Golden v. City of Columbus*,
  404 F.3d 950 (6th Cir. 2005) ............................................................24

*Golub v. Kidder, Peabody & Co.*,
  2000 WL 1024688 (S.D.N.Y. July 25, 2000) .........................................21

*Grimes v. Fremont Gen. Corp.*,
  785 F. Supp. 2d 269 (S.D.N.Y. 2011).........................................7, 8, 20

*Hafiz v. Greenpoint Mortg. Funding, Inc.*,
  652 F. Supp. 2d 1039 (N.D. Cal. 2009) ................................................18

*Harris v. City of New York*,
  186 F.3d 243 (2d Cir. 1999)..............................................................7, 8

*Harris v. N.Y. State Dep't of Health*,
  202 F. Supp. 2d 143 (S.D.N.Y. 2002).....................................................5

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)............................................................................7

*Hayden v. Cnty. of Nassau*,
  180 F.3d 42 (2d Cir. 1999).................................................................5

*Hernandez v. Sutter W. Capital*,
  No. C 09-03658, 2010 WL 3385046 (N.D. Cal. Aug. 26, 2010).............8

*Huntington Branch, NAACP v. Town of Huntington*,
  844 F.2d 926 (2d Cir. 1988).........................................................19, 23

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004)....................................................4

*In re Gaston & Snow*,
  243 F.3d 599 (2d Cir. 2001)...............................................................21

*In re Optimal U.S. Litig.*,
  No. 10 Civ. 4095, 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) ...........21

*In re Tyson*,
  433 B.R. 68 (S.D.N.Y. 2010)..............................................................21

*Inclusive Cmty. Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*,
  747 F.3d 275 (5th Cir. 2014) .............................................................24

*Ireland v. Centralbanc Mortg. Corp.*,
  No. 5:12-cv-02991, 2012 WL 4181418 (N.D. Cal. Sept. 18, 2012).........20

*Jones v. Ford Motor Credit Co.*,
   No. 00 Civ. 8330, 2002 WL 88431 (S.D.N.Y. Jan. 22, 2002)...............................10, 16, 19, 23

*La Faro v. N.Y. Cardiothoracic Grp., PLLC*,
   570 F.3d 471 (2d Cir. 2009)................................................................................................4

*Lapierre v. Cnty. of Nassau*,
   459 F. App'x 28 (2d Cir. 2012) .........................................................................................4

*Levin v. Yeshiva Univ.*,
   96 N.Y.2d 484 (N.Y. 2001) ..............................................................................................16

*Levitin v. PaineWebber, Inc.*,
   159 F.3d 698 (2d Cir. 1998).................................................................................................4

*Lewis v. ACB Bus. Servs., Inc.*,
   135 F.3d 389 (6th Cir. 1998) ............................................................................................20

*Lightfoot v. Union Carbide Corp.*,
   110 F.3d 898 (2d Cir. 1997)................................................................................................6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...........................................................................................................14

*M & T Mortg. Corp. v. White*,
   736 F. Supp. 2d 538 (E.D.N.Y. 2010) ..............................................................................10

*MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*,
   268 F.3d 58 (2d Cir. 2001)................................................................................................22

*Mangiafico v. Blumenthal*,
   471 F.3d 391 (2d Cir. 2006)............................................................................................4, 5

*Marcavage v. City of New York*,
   689 F.3d 98 (2d Cir. 2012)................................................................................................25

*Masudi v. Ford Motor Credit Co.*,
   No. 07 Civ. 1082, 2008 WL 2944643 (E.D.N.Y. July 31, 2008) ......................................18

*McCarthy v. Volkswagen of Am., Inc.*,
   55 N.Y.2d 543 (1982) ........................................................................................................11

*Milani v. IBM Corp.*,
   322 F. Supp. 2d 434 (S.D.N.Y. 2004)................................................................................10

*Moseke v. Miller and Smith, Inc.*,
   202 F. Supp.2d 492 (E.D. Va. 2002) ...............................................................................9, 24

*Munno v. Town of Orangetown*,
    391 F. Supp. 2d 263 (S.D.N.Y. 2005)...............................................................4-5

*NAACP v. Ameriquest Mortg. Co.*,
    635 F. Supp. 2d 1096 (C.D. Cal. 2009) ................................................................19

*Nat'l Council of La Raza v. Mukasey*,
    283 F. App'x 848, 851 (2d Cir. 2008) .................................................................15

*Ng v. HSBC Mortg. Corp.*,
    07-cv-5434, 2010 WL 889256 (E.D.N.Y. Mar. 10, 2010) ....................................20

*Nolfi v. Oh. Ky. Oil Corp.*,
    675 F.3d 538 (6th Cir. 2012) ...........................................................................9, 10

*Pierre v. Holder*,
    738 F.3d 39 (2d Cir. 2013)....................................................................................14

*Podobnik v. U.S. Postal Service*,
    409 F.3d 584 (3d Cir. 2005)...........................................................................11, 13

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120 (2d Cir. 2014).............................................................................9, 10

*Rodriguez v. Village of Island Park, Inc.*,
    No. CV-89-2676, 1991 WL 128568 (E.D.N.Y. July 2, 1991).........................12-13

*Roginsky v. Cnty. of Suffolk, N.Y.*,
    729 F. Supp. 2d 561 (E.D.N.Y. 2010) ..................................................................4

*Rotella v. Wood*,
    528 U.S. 549 (2000)................................................................................11, 12, 13

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008)...................................................................................1

*Salute v. Stratford Greens Garden Apartments*,
    136 F.3d 293 (2d Cir. 1998) (FHA) .....................................................................19

*Singleton v. Clash*,
    951 F. Supp. 2d 578 (S.D.N.Y. 2013).....................................................................9

*Smith v. City of Jackson, Miss.*,
    544 U.S. 228 (2005)..............................................................................................24

*Steed v. EverHome Mortg. Co.*,
    477 F. App'x 722 (11th Cir. 2012) .......................................................................20

*Subramaniam v. Beal*,
    No. 12 Civ. 1681, 2013 WL 5462339 (D. Or. Sept. 27, 2013)................................18

*Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*,
    509 F. App'x 54 (2d Cir. 2013) ..........................................................................22

*Taylor v. Accredited Home Lenders, Inc.*,
    550 F. Supp. 2d 1062 (C.D. Cal. 2001) ..................................................................8

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)................................................................................8, 9, 10

*Twersky v. Yeshiva Univ.*,
    No. 13 Civ. 4679, 2014 WL 314728 (S.D.N.Y. 2014) .........................................12

*Vaughn v. Consumer Home Mortg. Co.*,
    297 F. App'x 23 (2d Cir. 2008) ..........................................................................25

*VFS Fin., Inc. v. Falcon Fifty LLC*,
    --- F. Supp. 2d ----, No. 13 Civ. 3534, 2014 WL 1744496 (S.D.N.Y. Apr. 30, 2014) ...........22

*Webster Chrysler Jeep, Inc. v. Chrysler Holding LLC*,
    No. 08-CV-6535, 2010 WL 5185465 (W.D.N.Y. Dec. 13, 2010).........................20

## STATUTES

15 U.S.C. § 1691(a) ..............................................................................16, 24

15 U.S.C. § 1691a(e).....................................................................................20

15 U.S.C. § 1691e...................................................................................5, 6

15 U.S.C. § 1691e(f)(1)-(2) ............................................................................10

42 U.S.C. § 3604(a) ......................................................................................23

42 U.S.C. § 3605(a) ..............................................................................16, 23, 24

42 U.S.C. § 3605(b)(1) ...................................................................................16

42 U.S.C. § 3613(a)(1)(A) ..........................................................................5, 6, 9

N.Y. City Admin Code. 8-107(5)(d)...............................................................16

N.Y.C.P.L.R. § 213(8) ...................................................................................11

N.Y.C.P.L.R. § 214(2) ...............................................................................6, 11

N.Y.C.P.L.R. § 214-b ........................................................................................................11

N.Y.C.P.L.R. § 296-a(3) ....................................................................................................19

N.Y. Exec. Law 8-107(17)(a)(2) .......................................................................................19

N.Y. Exec. Law § 296-a......................................................................................................16

## OTHER AUTHORITIES

68 Fed. Reg. 13,144 (Mar. 18, 2003).................................................................................20

## INTRODUCTION

Plaintiff Tony Wong refinanced his home at the height of the housing bubble in 2007 with a cash-out loan that yielded a $34,721.39 payment to Plaintiff at closing.  Soon thereafter, the nation faced the greatest economic crisis in generations, and Plaintiff's business failed.  Plaintiff defaulted on his mortgage.  These unfortunate circumstances were not caused by Defendant Barclays Bank PLC ("Barclays"), and the Complaint should be dismissed.

Plaintiff delayed bringing his claims well past the expiration of the applicable statutes of limitations.  For that reason alone, the Complaint fails.  Further, because he is not able to trace the challenged actions of Barclays to any alleged injury, Plaintiff lacks standing.  Plaintiff also fails to state claims under the Fair Housing Act ("FHA"), Equal Credit Opportunity Act ("ECOA"), New York State Human Rights Law ("NYSHRL"), or New York City Human Rights Law ("NYCHRL").  To dodge the fact that Barclays was never his lender, Plaintiff accuses Barclays of encouraging its subsidiary EquiFirst Corporation ("EquiFirst") to engage in facially neutral lending that had an allegedly discriminatory impact on minority borrowers.  Unable to identify a specific policy employed by Barclays, Plaintiff relies on conclusory allegations that Barclays "controlled" EquiFirst and "directed" it to issue subprime loans without following standard underwriting procedures.  The Complaint provides no further factual content to support those allegations, and therefore fails to state a claim.  Finally, Plaintiff's disparate impact theory, claims for prospective relief, and accusations of alter ego liability all fail as a matter of law.  For these reasons, Barclays respectfully requests that the Court dismiss the Complaint.

## STATEMENT OF FACTS[1]

### I.    Barclays Purchased EquiFirst, a Subprime Mortgage Lender

The Complaint alleges that EquiFirst was a subprime mortgage lender operating since

---

[1]    For the purposes of this motion, Barclays accepts Plaintiff's factual allegations except where they are contrary to documents incorporated in the Complaint, public records, or judicial admissions of the Plaintiff.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).

1990.  Compl. ¶¶ 57-59.  During this time, EquiFirst "dealt exclusively in subprime products." *Id.* ¶ 60.  After its purchase by Barclays in early 2007, EquiFirst continued issuing subprime loans until February of 2009.  Ex. A to Mogul Decl. at 13 (Barclays Form 6-K (May 7, 2009)).[2]

Plaintiff does not describe any particular Barclays policy related to subprime lending. Indeed, Plaintiff does not even allege that Barclays was involved in subprime lending at all. Rather, Plaintiff makes various unsupported allegations that Barclays either "allowed" or "directed" EquiFirst to issue subprime loans based on a borrower's stated income.  Compl. ¶¶ 64-66, 71.  Plaintiff contends that "Barclays was in the unique position to direct EquiFirst" to increase its subprime and Alt-A lending.  *Id.* ¶ 64.  Plaintiff also asserts, without support, that Barclays so completely dominated EquiFirst that it became EquiFirst's alter ego.  *Id.* ¶ 69. Plaintiff also vaguely asserts that Barclays' "policies and practices fed off … reverse redlining," though the Complaint does not allege any entity actually engaged in reverse redlining.  *Id.* ¶ 75.

## II.    Plaintiff Refinanced His Home with an EquiFirst Mortgage in 2007

Plaintiff sought and obtained a home loan through EquiFirst, refinancing the mortgage on his property in Staten Island.  This new mortgage of $361,250 closed on November 8, 2007, and resulted in a $34,721.39 cash payment from EquiFirst to the Plaintiff at closing.  Compl. ¶¶ 11, 88; Ex. A to Parlato Decl. at 3 (Loan Documents ("Loan Docs.")).[3]  The loan featured a 30 year repayment plan and a fixed 11.075% interest rate.  Compl. ¶¶ 88, 91.  The monthly payment on the new mortgage was approximately $3,750 (inclusive of principal, interest, taxes, and insurance).  *Id.* ¶ 88.  Plaintiff alleges that his mortgage had a loan-to-value ratio over 90%, but the loan documents contradict this allegation, revealing that his home was appraised at $425,000, making his loan 85% of the property's appraised value.  *Compare* Compl. ¶ 92, *with* Loan Docs.

---

[2]    Mandatory public disclosure documents filed with the SEC may be considered on a Rule 12(b)(6) motion without converting the motion to one for summary judgment.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  Plaintiff has consented to the Court's consideration of this document.

[3]    As explained below at pages 4-5, the Court may consider Plaintiff's loan documents, as well as the docket for the foreclosure action filed by Sutton Funding, upon a motion to dismiss.

at 2, 3.

Plaintiff represented in his loan documentation an income of $13,765.00 per month, presumably earned by operating Chiam Tours, his travel company.  *See* Loan Docs. at 2. Comparing Plaintiff's income with his mortgage payment and other debts he reported as liabilities to EquiFirst yields a debt-to-income ratio of just over 30%.  *Id.*

## III.    Plaintiff Defaulted on His Mortgage and Was Subject to Foreclosure in 2008

Plaintiff made his mortgage payments for the first "six to seven months."  Compl. ¶ 96. These payments were made to the loan servicer, HomeEq Servicing, which was run by Barclays Capital Real Estate Inc., a subsidiary of Barclays.  *Id.* ¶¶ 54, 97-98.  In early 2008, Plaintiff's travel company went out of business.  Ex. B to Mogul Decl. at 42, ¶ 11 (Wong Affidavit from foreclosure action).  As a result, Plaintiff stopped making payments on his home loan "in or around July 2008."  *Id.*  He nevertheless continues to reside in the home.  Compl. ¶¶ 82, 96-98.

Sutton Funding LLC, a subsidiary of Barclays, started a foreclosure action against Plaintiff in August of 2008.  *Id.* ¶ 98.  However, two months after Sutton Funding filed its complaint, Sutton Funding sent a stipulation to discontinue the foreclosure action to Plaintiff. Wong Foreclosure Aff. at 43, ¶¶ 15-16; Compl. ¶¶ 99, 105.  Plaintiff is currently the subject of a second, unresolved foreclosure action, filed in May 2009 by Selene Financial LP, an entity not alleged to have any relationship to Barclays.  Compl. ¶ 101.

Plaintiff filed this lawsuit on April 30, 2014, over six years after he closed on his mortgage, and nearly six years after he defaulted and was first subject to a foreclosure action.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement" or present "a formulaic recitation of the elements of the cause of action."  *Id.*

(citation omitted).  In considering a motion to dismiss, a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor," except insofar as those allegations are contradicted by public records or documents incorporated in the complaint. *La Faro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004).

Plaintiff declined to consent to the Court's consideration of two documents, despite clear Circuit case law permitting the Court to "consider a document where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint" in evaluating a motion to dismiss.  *Lapierre v. Cnty. of Nassau*, 459 F. App'x 28, 30 (2d Cir. 2012). Such documents are properly considered if they were "documents plaintiffs had either in [their] possession *or* had knowledge of and upon which they relied in bringing suit.'" *Chambers v. Time Warner Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis added).  Courts may review contracts integral to the complaint even when plaintiff alleges no breach of contract claim. *See, e.g.*, *Levitin v. PaineWebber, Inc.*, 159 F.3d 698 (2d Cir. 1998) (securities fraud and breach of fiduciary duty claims); *Roginsky v. Cnty. of Suffolk, N.Y.*, 729 F. Supp. 2d 561, 566 (E.D.N.Y. 2010) (age discrimination claims).  Plaintiff's loan application, mortgage, and note (Exhibit A to the Parlato Declaration) are integral to the Complaint, which frequently refers to terms that originated in these documents and to financial information that Plaintiff represented to EquiFirst in these documents.  Plaintiff signed these documents and his allegations rely upon an accurate recounting of their terms.

"Docket sheets are public records of which the court could take judicial notice." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).  "The court may also consider [on a motion to dismiss] . . .  public records and [] admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action."  *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268

(S.D.N.Y. 2005) (internal citation omitted); *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002).  The docket from the Sutton foreclosure action (Exhibit B to the Mogul Declaration), includes Plaintiff's sworn affidavit.  As described below at pages 14-15, this affidavit contradicts Plaintiff's allegations about the cause of his default; he previously attributed the default to the closing of his travel agency, but now attributes it to the terms of his mortgage.

There is no error in the Court having these documents as a background reference even if it were not able to rely on them in ruling on this motion.  *See Mangiafico*, 471 F.3d at 398; *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).[4]  Barclays believes the Court should not be prevented from having background information derived from documents previously signed and sworn to by Plaintiff.  Plaintiff's refusal to consent to the attachment of these documents is not supported by the law of this Circuit.

## ARGUMENT

## I.   APPLICABLE STATUTES OF LIMITATIONS BAR PLAINTIFF'S CLAIMS

Each of Plaintiff's four causes of action accrued when Plaintiff closed his home loan in November of 2007, or, at the latest, when he defaulted on his home loan in 2008.  The longest of the relevant limitations periods had lapsed by no later than mid-2011.  However, Plaintiff did not file the present action until April 2014.  Thus, all of Plaintiff's claims are time-barred and must be dismissed.

### A.   Plaintiff's Claims Accrued When He Closed on His Loan, or, at the Latest, When He Defaulted on His Loan

The accrual rules for all of Plaintiff's claims are similar.  The language of both ECOA and FHA specify the "occurrence" of a violation as the moment a claim accrues — or, in the case of the FHA, the "occurrence or termination" of the policy at issue.  42 U.S.C. § 3613(a)(1)(A); 15 U.S.C. § 1691e.  Under New York law, statutory claims such as those brought under the

---

[4]    Noting the Court's interest in the relevant background, Barclays has sent Plaintiff and the Court (for review *in camera* if it chooses) the entirety of the investor loan file for Plaintiff's loan, which includes such documents as the appraisal of Plaintiff's home around the time of closing.

NYSHRL and NYCHRL accrue "when all of the factual circumstances necessary to establish a right of action have *occurred*."  *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001) (emphasis added).

Plaintiff's claims accrued when he closed on his loan on November 8, 2007, or, at the latest, when he defaulted on his loan in mid-2008.  Plaintiff characterizes his alleged injury as "excessive fees and costs and default or foreclosure or excessive risk of default, delinquency, and foreclosure of his home."  Compl. ¶ 118.  The alleged "excessive fees and costs" were disclosed to Plaintiff in "precise terms" by the date of closing, November 8, 2007.  Compl. ¶ 90.  Thus, Plaintiff must have suffered all his alleged injuries by the time he closed on his loan on November 8, 2007, or at the latest, when he defaulted in July 2008.  Further, all factual circumstances relevant to Plaintiff's underlying allegation that EquiFirst's subprime lending practices had a disparate impact on protected groups in New York City occurred no later than 2008.  Indeed, the Complaint alleges that EquiFirst's *2007 lending practices* caused a disparate impact.  Compl. ¶¶ 78-81.  By definition, all of these loans were originated before Plaintiff's 2008 default.

### B.     The Limitations Period Applicable to Each Claim Expired Years Before Plaintiff Filed the Complaint

Plaintiff's claims are subject to either a two or three year limitations period.  *See* 42 U.S.C. § 3613(a)(1)(A) (FHA; two years); 15 U.S.C. § 1691e (1991) *amended by* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No-111-203, § 1085, 124 Stat. 1376 (2010) (ECOA; two years);[5] N.Y. C.P.L.R. § 214(2) (NYSHRL and NYCHRL; three years); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) (same).  Thus, the longest of these periods, which is applicable to the New York claims, lapsed in either November of 2010 or, at the latest, July of 2011.  This action was not filed, however, until April 2014, several years

---

[5]     A newly enacted limitations period may not be applied retroactively to revive a claim that had otherwise lapsed.  *See Enter. Mortg. Acceptance Co., LLC, Secs. Litig. v. Enter. Mortg. Acceptance Co.*, 391 F.3d 401, 410 (2d Cir. 2004).

too late.  Plaintiff admitted that absent any tolling rule, his claims would be untimely.  Transcript of Pre-Motion Conference at 10:6-15 (Aug. 7, 2014) ("Conf. Tr.").

### C.      No Continuing Violation Delayed the Accrual of Plaintiff's Claims

Allegations that Plaintiff continues to feel the effects of his alleged injuries, including demands for repayment and the continuing foreclosure action, *see, e.g.*, Compl. ¶ 120, do not toll the limitations period under the continuing violations doctrine.  A continuing violation does not lie "merely because a claimant continues to feel the effects of a time-barred discriminatory act." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).  Rather, to state a continuing violation, a plaintiff must allege that an act (1) taken by the defendant (2) as part of the challenged policy, has occurred within the limitations period.  *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 158 n.12 (2d Cir. 2012).  Thus, "a disparate impact claim requires plaintiffs to plead and prove that defendants, within the limitations period, *used* [the challenged] practice that had a disparate impact." *Id.* (emphasis in original); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982) (FHA claim); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (dismissing FHA claim where plaintiffs failed to allege, *inter alia*, any "act, taken against them by any Defendant after [the statute of limitations cut-off date], that could state a claim under the FHA").

Here, Plaintiff challenges Barclays' "policy of pushing EquiFirst to originate subprime loans without regard to standard underwriting guidelines and without regard to a borrower's ability to repay."  Compl. ¶ 113.  Plaintiff does not allege, however, that Barclays has taken any action in furtherance of this alleged policy within the three years prior to the filing of the Complaint.  Indeed, Plaintiff could not make such an allegation because EquiFirst stopped originating loans in 2009.  *See* Barclays 6-K at 13.

Instead, Plaintiff grounds his continuing violation theory in continued demands for repayment and an on-going foreclosure action.  *See* Compl. ¶ 118; Pl.'s Pre-Motion Letter at 2,

(Dkt. No. 15) ("Pre-Motion Letter").  These allegations fail to plead a continuing violation for two reasons.  *First*, Plaintiff fails to allege that Barclays (or even its subsidiaries) made any such demands for repayment or maintained the foreclosure action within the limitations period.  *See Grimes*, 785 F. Supp. 2d at 292.  Sutton Funding has made no effort to pursue foreclosure since 2008, when it stipulated to dismissal.  *See* Wong Foreclosure Aff. at 43, ¶¶ 15-16.  *Second*, Plaintiff's allegations describe only "the effects of a time-barred discriminatory act," which by themselves cannot form the basis for a continuing violations theory.  *Harris*, 186 F.3d at 250; *see Adkins v. Morgan Stanley*, No. 12 CV 7667, 2013 WL 3835198, at *5 (S.D.N.Y. Jul. 25, 2013).  Demands for repayment and a continuing foreclosure action are not part of the challenged policy, which Plaintiff alleges was "pushing EquiFirst to originate subprime loans without regard to standard underwriting guidelines."[6]  Comp. at ¶113.  Rather, they are the manifestation of the alleged *harm* or effect that Plaintiff expressly claims in the Complaint:  allegedly excessive fees and costs, and an allegedly increased risk of foreclosure.

    **D.**    **Plaintiff's Claims Are Not Timely Under the Discovery Rule**

        **1.**    **The Discovery Rule Does Not Apply to Any of Plaintiff's Claims**

The discovery rule only applies to federal statutory causes of action that (1) expressly call for it, or (2) are sufficiently ambiguous to permit the court to impute the rule to the statutory provision.  *TRW Inc. v. Andrews*, 534 U.S. 19, 32 (2001).  *TRW* requires courts to analyze the "text and structure" of a statute to determine whether Congress intended for the discovery rule to apply.  *Id.* at 28; *see also Benzemann v. Citibank N.A.*, No. 12 Civ. 9145, 2014 WL 2933140, at *6 (S.D.N.Y. June 27, 2014) (discovery rule inquiry begins "with the language of the statute itself.").  In *TRW*, the Supreme Court held that the discovery rule could not be read into the Fair

---

[6]    *Taylor v. Accredited Home Lenders, Inc.*, 550 F. Supp. 2d 1062 (C.D. Cal. 2001), which Plaintiff cited in his pre-motion response letter and which suggests that demands for repayment constitute a basis for a continuing violation, is an outlier even in the Ninth Circuit.  *See Hernandez v. Sutter W. Capital*, No. C 09-03658, 2010 WL 3385046, at *3 (N.D. Cal. Aug. 26, 2010) (noting that most courts reject the idea that demands for repayment can state a continuing violation of the FHA or ECOA and collecting cases).

Credit Reporting Act where the language of the statute evinced congressional intent that it should not apply, noting that holding otherwise would threaten to make the one statutory exception to the limitations period superfluous. *Id.* Following the Supreme Court's guidance, courts should consider that "Congress's failure to include language providing for the discovery rule counsels against implying it into the statute. Congress could have used language, as it has in other statutes of limitations, to indicate that the discovery rule should apply." *Singleton v. Clash*, 951 F. Supp. 2d 578, 586 (S.D.N.Y. 2013).

The weight of authority holds that no discovery rule applies in FHA cases. The Ninth Circuit explained that allowing FHA claims to be tolled under the discovery rule would "render the clear language of the [FHA's limitations provision] meaningless and superfluous." *Garcia v. Brockway*, 526 F.3d 456, 466 (9th Cir. 2008). The Ninth Circuit noted the FHA's specific language starting the limitations period at "'*the occurrence* or the termination of an alleged discriminatory housing practice,'" and not at *the time of injury* or *accrual*. *Id.* at 464 (quoting 42 U.S.C. § 3613(a)(1)(A)) (emphasis added); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. 10-cv-3517, 2011 WL 3476994, at *8 (D. Md. Aug. 8, 2011) (holding that the "unambiguous language" of the FHA prevented application of the discovery rule); *Moseke v. Miller and Smith, Inc.*, 202 F. Supp.2d 492, 509 (E.D. Va. 2002) (similar).

Though the Second Circuit has not addressed whether FHA claims are subject to the discovery rule, it conducts the same test as that applied in *Garcia* and other circuits. *Compare Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124-25 (2d Cir. 2014) (holding Copyright Act claims subject to discovery rule because statute provided that limitations period began when claim "accrued"), *with Nolfi v. Oh. Ky. Oil Corp.*, 675 F.3d 538, 552-53 (6th Cir. 2012) (declining to read discovery rule into statute starting limitations period at the time of the alleged "violation"). As another court in this District ruled recently, statutory language that begins

> running the statute of limitations "on the date when the violation occurs"
> … stands in contrast to those statutes that either explicitly provide for a
> discovery rule or at least delay the start of the statute of limitations until

> the plaintiff's claim accrues.  Moreover, a statute that "keys the start of the limitations period to the 'date of the occurrence of the violation' plainly establishes" that Congress did not intend for the discovery rule to apply.

*Benzemann*, 2014 WL 2933140, at \*6 (S.D.N.Y. June 27, 2014) (quoting *TRW*, 534 U.S. at 32).

As in *Benzemann* and *Nolfi*, FHA claims accrue at the time of the alleged violation, not, as in

*Psihoyos*, at "accrual."[7]

Similarly, ECOA claims are not subject to a discovery rule.  Like FHA, ECOA, by its

plain language, does not permit the application of the discovery rule; its limitations period

contains exceptions of the exact kind that barred the application of the discovery rule in *TRW*.

*See* 15 U.S.C. § 1691e(f)(1)-(2); *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508

(5th Cir. 2008); *Adkins*, 2013 WL 3835198, at \*7.  Claims under ECOA, like those under FHA,

accrue on the "occurrence of the violation."  *Claybrooks v. Primus Auto. Fin. Servs., Inc.*, 363 F.

Supp. 2d 969, 975 (M.D. Tenn. 2005).  Because ECOA's limitations provision contains

exceptions, and expressly turns on the "occurrence of the violation," it unambiguously

establishes the time of accrual of a claim, and no discovery rule can be read into its terms.

Finally, Barclays is aware of no case applying the discovery rule to the NYSHRL or

NYCHRL, and the only relevant decision suggests that it does not.  *See Milani v. IBM Corp.*, 322

F. Supp. 2d 434, 453 n.35 (S.D.N.Y. 2004).  As New York's highest court has counseled, "the

various tolling provisions to the Statutes of Limitation are largely, if not exclusively, the product

of legislative design … [and] our examination of the scope of [the particular tolling provision]

---

[7]   *Adkins*, which permitted a plaintiff asserting FHA (though not ECOA) claims to benefit from the discovery rule, construed *TRW* too narrowly by limiting its holding to limitations periods that "expressly provided for a limited discovery rule." *Adkins*, 2014 WL 3835198, at \*6.  *Jones v. Ford Motor Credit Co.*, on the other hand, disagreed with *Adkins* by applying the discovery rule to an ECOA claim.  No. 00 Civ. 8330, 2002 WL 88431 (S.D.N.Y. Jan. 22, 2002).  *Jones* was also wrongly decided; it did not apply *TRW*'s holding that courts look to the text of a statute to determine whether the discovery rule applies, and relied solely on a pre-*TRW* Northern District of Illinois case for authority.  *Id.*

In his pre-motion response letter, Plaintiff asserted that *M & T Mortg. Corp. v. White*, held that the discovery rule applied under these statutes, but that decision tolled the statute of limitations on equitable tolling grounds — which Plaintiff here has not pled — and not the discovery rule.  736 F. Supp. 2d 538, 555-56 (E.D.N.Y. 2010).

requires a determination of the legislative intent underlying the statute." *McCarthy v. Volkswagen of Am., Inc.*, 55 N.Y.2d 543, 547 (1982).  The New York legislature has codified a limitations period for all claims arising under state statutes, New York C.P.L.R. § 214(2), and, in stark contrast to other statutory limitations periods, that provision does not provide for tolling via the discovery rule.  *Compare* N.Y. C.P.L.R. § 214(2) (claims based on statutory rights "must be commenced within three years") *with* N.Y. C.P.L.R. §§ 213(8) (applying the discovery rule for actions premised on fraud) *and* 214-b (applying the discovery rule for actions premised on the latent effects of exposure to a substance).  When it deems it appropriate, the New York legislature has provided for the discovery rule, but did not do so in connection with the NYSHRL or NYCHRL.  This Court should not apply a discovery rule absent any indication of legislative intent to apply the discovery rule to these claims.  *See McCarthy*, 55 N.Y.2d at 547.

### 2. Even If the Discovery Rule Applied to Plaintiff's Claims, It Would Not Render His Complaint Timely

Even if the discovery rule applied to Plaintiff's claims, their accrual would only have been postponed until he had "knowledge of, or knowledge that could lead to, the basic facts of the injury, *i.e.*, knowledge of the injury's existence and knowledge of its cause or the person or entity that inflicted it."  *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999) (internal citation omitted).  As the Second Circuit explained, the discovery rule means "a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation *to protect himself by seeking legal advice*."  *Id.* (emphasis added).  Put another way, a claim accrues when a plaintiff knows enough to speak with an attorney — not when he actually does.  *See Rotella v. Wood*, 528 U.S. 549, 555 (2000); *Podobnik v. U.S. Postal Service*, 409 F.3d 584, 590-91 (3d Cir. 2005).  Plaintiff had such knowledge no later than 2008; therefore, even if the discovery rule applied, his 2014 Complaint is still untimely.

A claim may accrue even though a plaintiff does not know that the injury "implicates a cognizable legal claim."  *Rotella*, 528 U.S. at 555.  "In applying a discovery accrual rule," the

Supreme Court "has been at pains to explain that discovery of the injury, *not discovery of the other elements of a claim*, is what starts the clock." *Id.* (emphasis added). Thus, courts reject arguments by plaintiffs that they, for example, had not "discovered" injuries until reading an article revealing a defendant's culpable state of mind as "confus[ing] knowledge of the existence of a legal right with knowledge of injury." *Twersky v. Yeshiva Univ.*, No. 13 Civ. 4679, 2014 WL 314728, *8 (S.D.N.Y. 2014). Once a plaintiff knows of his injury, the period begins to run "even if identifying the elements of a complete cause of action is 'a matter of real complexity' because the elements themselves are complex or concealed." *Id.* at *7. To hold that the discovery rule tolled claims until a plaintiff's legal claim was discovered would "bar repose, prove a godsend to stale claims, and doom any hope of certainty in identifying potential liability." *Rotella*, 528 U.S. at 559.

Here, the Complaint demonstrates that Plaintiff had "knowledge of, or knowledge that could lead to, the basic facts of the injury" at the original closing date, or at the latest, by the time he defaulted. Plaintiff's injuries pertain to the terms of his loan, and the risk of foreclosure, all of which he must have known by the time of closing or default. Whether EquiFirst had made other subprime loans to minorities does not constitute a basic fact of Plaintiff's injury.[8]

This conclusion is supported by those courts to have considered the timeliness of FHA claims. In *Clement v. United Homes, LLC*, the plaintiff alleged that she had been injured when she was sold a low-quality home as part of a "reverse-redlining" scheme. 914 F. Supp. 2d 362, 367 (E.D.N.Y. 2012). The court held that her claim accrued when she discovered the defects in her home, which constituted the "critical facts" of injury, even though she had not yet discovered the discrimination that was an essential component of her FHA claim. *Id.* at 372; *see also Rodriguez v. Village of Island Park, Inc.*, No. CV-89-2676, 1991 WL 128568 (E.D.N.Y. July 2,

---

[8]    Even if this information does constitute a basic fact of injury, the lending data cited by Plaintiff to support his disparate impact claim became available in 2008. *See* Compl. ¶ 80-81.

1991) (refusing to determine whether the discovery rule applied under the FHA and rejecting its potential application where plaintiffs argued that discovery did not occur until they read a newspaper article revealing the discriminatory policies of the defendant); *see also Coulibaly*, 2011 WL 3476994, at *9 (holding plaintiffs' failure to take action on their discrimination claim "until they received a letter indicating they might possess a cause of action" did not extend the time of accrual but instead "suggest[ed] far less than reasonable diligence").

Plaintiff cannot argue that his claims accrued in 2012, when he met with his attorneys and allegedly learned that he might have a legal claim under a disparate impact theory. *See* Compl. ¶ 104.  The discovery rule does not delay accrual until counsel informs a plaintiff that he or she may have a legal claim.  In *Podobnik*, the Third Circuit rejected the argument that the plaintiff did not know of his injury until he met with an attorney who informed him that adverse actions taken against him may have been discriminatory under the ADEA.  409 F.3d at 590-91.  The court reasoned that  were it "to extend the reach of the discovery rule to delay accrual until a plaintiff learned that a legal injury had occurred . . .  a statute of limitations would become effectively meaningless." *Id.*  To hold otherwise would be to allow plaintiffs, through ignorance or fraud, to "bring [a] discrimination claim at any point in [their] lifetime, regardless of when the underlying acts occurred." *Id.*; *see Rotella*, 528 U.S. at 555.

## II.    PLAINTIFF LACKS STANDING TO ASSERT CLAIMS AGAINST BARCLAYS

Plaintiff does not have standing to assert claims against Barclays because he is unable to connect the alleged wrongful actions of Barclays to his alleged injury:  his loan was not one of the subprime loans that EquiFirst extended allegedly "without regard to a borrower's ability to repay."  Compl. ¶ 113.  To survive a "motion to dismiss, [a plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145-46 (2d Cir. 2011).  To do so, a plaintiff must allege "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, [not] merely speculative, that the injury will be redressed by a favorable decision." *Pierre v. Holder*, 738 F.3d 39, 47 (2d Cir. 2013) (citations omitted).

Plaintiff cannot plead the second element, that his alleged injuries are fairly traceable to the challenged action of Barclays. Plaintiff must allege that his injury is "fairly trace[able] to the challenged action of the defendant, and not … the[e] result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). Although Plaintiff need not allege that Barclays' actions were "the very last step" in the chain of events leading to his purported injuries, he must plead specific facts to support a reasonable inference that "defendants' actions had a 'determinative or coercive effect upon the action of someone else' who directly caused the alleged injury." *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). Thus, he must proffer facts establishing that all links in the causal chain are satisfied. *See Allen v. Wright,* 468 U.S. 737, 757-58 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377 (2014).

Plaintiff cannot connect his alleged injury to the alleged conduct of Barclays. The alleged action of Barclays is its influence on EquiFirst which resulted in loans extended "without regard to standard underwriting procedures or a homeowner's ability to repay." Compl. ¶ 71. Thus, to establish standing, Plaintiff would need to allege that his loan, in particular, was predatory and issued without regard to his ability. Plaintiff's attempt to do so by claiming he had a predatory loan that he was unable to repay at the time of closing, *id.* ¶¶85-87, is implausible.

First, Plaintiff admits that he was able to pay his mortgage at the time the loan closed, and for the first several months thereafter before his company went out of business. *See* Wong Foreclosure Aff. at 42, ¶ 12; Compl. ¶ 96. Plaintiff's prior sworn statement is that "when [his] travel agency closed in 2008, [he] was no longer able to make the monthly mortgage payment.

14

As a result, in or around July 2008, [he] completely stopped making mortgage payments." Wong Foreclosure Aff. at 43, ¶ 14.  Thus, Plaintiff's allegations that his loan was made without regard to his ability to repay are contradicted by Plaintiff himself.  By his own admission, subsequent events, not the alleged actions of Barclays, resulted in his inability to pay his loan and default.

Even without Plaintiff's admission, the Complaint does not allege adequately that Plaintiff received a predatory loan.  By Plaintiff's definition, for a loan to be "subprime," an admittedly broader category than predatory loans, it must have two or more high-risk terms such as a debt-to-income ratio over 55% or a loan-to-value ratio over 90%.  Compl. ¶¶ 36-38. Plaintiff alleges that his loan suffered from three such terms: that it was a stated income loan, that it resulted in a higher than 90% loan-to-value ratio, and that it resulted in a higher than 55% debt-to income ratio.  *See id.* ¶ 85.  Documents incorporated into the Complaint contradict the second and third allegations.  Plaintiff's property was appraised at $425,000 at the time of closing; thus the loan of $361,250 was *85%* of the property value.  *See* Compl. ¶¶ 11, 88, Loan Docs. at 3.  Plaintiff's property value may have declined during the subsequent economic crisis (as real estate values plummeted across the country at that time), but Plaintiff does not allege that the appraisal was incorrect at closing.  Moreover, comparing Plaintiff's self-reported $13,765 in monthly income with the monthly mortgage payment of approximately $3,750, and adding in Plaintiff's other debts as reported to EquiFirst in his loan application, yields a debt-to-income ratio of just over *30%.  See* Loan Docs. at 2, 3.  That EquiFirst extended Plaintiff a loan based on the income Plaintiff himself stated in his application cannot, by itself, make the loan predatory.[9]

Plaintiff has not alleged any injury fairly traceable to the policies of Barclays that he

---

[9]    Furthermore, even if Plaintiff could allege that his loan was predatory and extended without regard to his ability to repay, it is undisputed that his loan was extended by EquiFirst, not Barclays.  As noted below, Plaintiff's conclusory assertions that Barclays "direct[ed] EquiFirst's subprime lending" do not "support a reasonable inference" that Barclays' alleged conduct had a "determinative or coercive effect" on EquiFirst's alleged "policy" to extend a subprime mortgage loan to Plaintiff.  *Nat'l Council of La Raza v. Mukasey*, 283 F. App'x 848, 851 (2d Cir. 2008). Therefore, even if Plaintiff had properly alleged injuries flowing from the actions of EquiFirst, his injuries would not be directly and fairly traceable to Barclays.

contends are at issue.  Plaintiff therefore lacks standing to bring his claims.

**III.     THE COMPLAINT FAILS TO STATE A CLAIM**

> **A.     Plaintiff Does Not Satisfy the Elements of Any of the Statutes at Issue**
>
> > **1.     Plaintiff Has Not Sufficiently Alleged a Policy of Barclays that Is Prohibited under FHA, ECOA, or the New York Statutes**

As explained in Section III.B below, Plaintiff would need to allege disparate *treatment*, not merely disparate *impact*, to state a claim under FHA or ECOA.  Nonetheless, Plaintiff fails even to sufficiently allege disparate impact, because he cannot identify a Barclays practice or policy prohibited by the statutes underlying Plaintiff's claims.

The FHA extends to any "entity whose business includes engaging in residential real estate-related transactions," 42 U.S.C. § 3605(a), (b)(1), and makes it unlawful for such entities "to discriminate against any person."  *id.* § 3605(a).  The Second Circuit, in articulating the standard for disparate impact claims under other sections of the FHA, requires plaintiffs to allege that the defendant's "outwardly neutral practice actually or predictably has a discriminatory effect."  *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y.,* 316 F.3d 357, 366 (2d Cir. 2003).  Similarly, ECOA provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race."  15 U.S.C. § 1691(a).  District courts suggest that a plaintiff must "(1) identify a specific practice or policy used by the defendant; and (2) demonstrate, through statistical evidence, that the practice or policy has caused an adverse effect on the protected group" for an ECOA claim.  *Jones v. Ford Motor Credit Co.*, No. 00 Civ. 8330, 2002 WL 88431 (S.D.N.Y. Jan. 22, 2002).  Under the NYSHRL, a plaintiff must identify a "facially neutral policy" by a defendant who is a "creditor" that "falls more harshly on a protected group."  *Duncan v. N.Y. City Transit Auth.*, 127 F. Supp. 2d 354, 360 (E.D.N.Y. 2001); N.Y. Exec. Law § 296-a.  The NYCHRL requires that a plaintiff make similar allegations.  *See Levin v. Yeshiva Univ.*, 96 N.Y.2d 484, 494 (N.Y. 2001); N.Y. City Admin Code. 8-107(5)(d).  Plaintiff does not allege

sufficiently the central element to each of these claims: a policy or practice of Barclays that had a disparate impact.

### a)   Barclays Had No Role In Originating or Purchasing Loans

Plaintiff's claims all require allegations that the *defendant's* policies had a discriminatory impact and caused Plaintiff injury. But as the Complaint readily admits, Barclays had no direct role in the origination of Plaintiff's particular loan. Compl. ¶ 6, 85. Indeed, there is no allegation that Barclays originated *any* loans.

Furthermore, though Plaintiff alleges that entities "purchasing" loans can be liable under FHA and that "an assignee of an original creditor" can be liable under ECOA, Compl. ¶¶ 110-11, 125-27, he does not allege that Barclays purchased or was assigned Plaintiff's loan (or any loan). Even if Barclays had purchased Plaintiff's loan, Plaintiff has not alleged that any Barclays policy involving purchasing loans had a disparate impact on a protected class or caused any injury.

### b)   Plaintiff's Allegations that Barclays Influenced EquiFirst's Policies Are Conclusory

Plaintiff alleges that Barclays, through its ownership of EquiFirst, enacted a policy that influenced the way EquiFirst originated loans. However, Plaintiff fails to provide any factual support for these allegations; their conclusory nature cannot survive a motion to dismiss.

Plaintiff alleges that Barclays "provided the crucial funding necessary for EquiFirst to continue making subprime mortgages" after acquisition and "provid[ed] EquiFirst with warehouse lines of credit." *Id.* ¶¶ 6, 63. This, Plaintiff alleges, "encourag[ed] EquiFirst to expand further into the [subprime and Alt-A] market" and "provide subprime … products based upon stated income." *Id.* ¶ 64. Plaintiff also contends that Barclays (1) "positioned itself to adjust EquiFirst's underwriting policies," *id.* ¶ 6; and (2) "direct[ed] EquiFirst's underwriting procedures," *id.* ¶ 64. Plaintiff then concludes that Barclays "allowed EquiFirst to ignore standard underwriting procedures" *id.* ¶ 65, and that "Barclays's policies of directing EquiFirst's subprime lending" had an adverse impact on protected classes of people. *Id.* ¶ 70.

These allegations merely parrot what is required for a disparate impact claim, and fail to identify any specific Barclays policy.  If Barclays was "positioned" to "adjust" or "direct" EquiFirst's underwriting policies, the Complaint fails to allege how it did so.  Nor does it identify which Barclays' practices "allowed EquiFirst to ignore standard underwriting procedures," or which procedures EquiFirst allegedly ignored.  This is a classic example of what the Supreme Court warned would fail to pass muster at the pleading stage:  a collection of "naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678.

### c)   Conclusory and Vague Allegations Similar to Those in the Complaint Cannot Support a Disparate Impact Claim

Courts routinely dismiss disparate impact claims that rely on conclusory allegations such as those here.  Bare assertions that a lender did not follow standard underwriting guidelines fail to state a claim.  *See Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1041-42 (N.D. Cal. 2009).  So do general allegations that the actions of a defendant encouraged another to extend subprime loans.  For example, in *Subramaniam v. Beal*, the court dismissed claims against a mortgage loan securitizer based on allegations that the plaintiff had been pushed into a loan with disadvantageous terms.  No. 12 Civ. 1681, 2013 WL 5462339, at *9 (D. Or. Sept. 27, 2013).  The court rejected plaintiff's attempt to allege that Bear Stearns, who sometimes securitized the originator's loans, could be liable because the fees it paid the originator would incentivize the originator to generate more subprime loans.  *Id.*; *see also Masudi v. Ford Motor Credit Co.*, No. 07 Civ. 1082, 2008 WL 2944643, at *4-5 (E.D.N.Y. July 31, 2008) (dismissing ECOA claim where plaintiff asserted only conclusory allegations about the policies of the named defendant and the policies' connection to plaintiff's loan).

In contrast, courts permit disparate impact claims only when a plaintiff can allege a specific policy enacted by the defendant itself.  For example, in *City of Memphis v. Wells Fargo Bank*, the plaintiffs "set forth the factual predicates of their claims," alleging specific policies of the defendant lender, including that it "gave loan officers wide discretion" and "large incentives"

18

to "steer[] borrowers towards subprime loans … without regard to whether the customer[s] qualified for a better loan," and that the lender exacted its highest interest rates on small mortgages more likely to be sought after by low-income individuals.  No. 09-2857, 2011 WL 1706756, *14 (W.D. Tenn. May 4, 2011).  Similarly, plaintiffs in another case "extensively alleged specific details of several interrelated, discriminatory [policies] … includ[ing]: steering credit worthy borrowers to more costly loans, reverse redlining," and various marketing and loan review policies.  *Dekalb Cnty. v. HSBC N. Am. Holdings, Inc.*, No. 12-cv-03640, 2013 WL 7874104, at *13-14 (N.D. Ga. Sept. 25, 2013); *see also NAACP v. Ameriquest Mortg. Co.*, 635 F. Supp. 2d 1096, 1104 (C.D. Cal. 2009) (plaintiff alleged specific marketing, financial incentive, and loan review policies).  In *Adkins*, plaintiff alleged that the defendant had specific policies that "requir[ed] that [the originator's] loans include adjustable rates and prepayment penalties," and "placed at least two employees onsite at [the originator]" who would "shred" "full-documentation" loan files (those that verified income) "and tell the originator to get a new, 'stated income' loan."  2013 WL 3835198, at *9.

Unlike those cases where disparate impact claims have survived motions to dismiss, Plaintiff's allegations here lack any detail or factual predicate identifying a Barclays policy that purportedly had a disparate impact on minority groups.  Instead, as in *Subramaniam*, Plaintiff's conclusory allegations fail to state a claim.[10]

**d)  Plaintiff Fails to Assert a Claim Based on "Reverse Redlining"**

Plaintiff alleges that Barclays had "policies and practices that fed off reverse redlining."

---

[10]  Even if Plaintiff named EquiFirst as a defendant and challenged its lending policies, such claims would fail because these policies reflect EquiFirst's significant business interests.  Each of Plaintiff's claims permit policies that meet a defendant's significant business needs despite any disparate impact.  *See, e.g., Huntington*, 844 F.2d 926, 937 ("there must be a weighing of the [discriminatory] impact against the defendant's justification"); *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 302 (2d Cir. 1998) (FHA); *Jones*, 2002 WL 88431, at *3 (ECOA); N.Y. Exec. Law 8-107(17)(a)(2) (NYCHRL); N.Y. C.P.L.R. § 296-a(3) (NYSHRL) Plaintiff concedes that EquiFirst's *only* business was making subprime loans, *see* Compl. ¶¶ 57-61, and a challenge to such lending would target EquiFirst's *entire* business purpose.

Compl. ¶ 75.  It is not clear, however, what Plaintiff means by this allegation.  "Reverse redlining" is "the practice of extending credit on unfair terms *because of* the plaintiff's race and geographic area."  *Steed v. EverHome Mortg. Co.,* 477 F. App'x 722, 726 (11th Cir. 2012) (citation omitted) (emphasis added).  If Plaintiff means to allege that Barclays engaged in reverse redlining, the Complaint fails to state such a claim, which requires an allegation of either intentional targeting or disparate treatment.  *See Grimes*, 785 F. Supp. 2d at 292 n.33; *City of Memphis*, 2011 WL 1706756, at *14; *Diaz v. Bank of Am. Home Loan Servicing*, No. 09-cv-9286, 2010 WL 5313417, at *5 (C.D. Cal. Dec. 16, 2010); *Ng v. HSBC Mortg. Corp.*, 07-cv-5434, 2010 WL 889256, at *11 (E.D.N.Y. Mar. 10, 2010).  Disparate impact is insufficient.

### e)      Barclays Does Not Qualify as a "Creditor" Under ECOA

Only a defendant qualified as a "creditor" who has "participate[d] in the decision to extend, renew, or continue credit" may be liable under ECOA.  15 U.S.C. § 1691a(e); 12 C.F.R. § 202.2(*l*).  Where, as here, the defendant is removed from the origination of the loan, plaintiffs cannot allege that the defendant is a "creditor" unless the defendant is properly alleged to have implemented a policy that "influence[d] individual credit decisions."  68 Fed. Reg. 13,144, 13,145 (Mar. 18, 2003).  Thus, courts dismiss ECOA claims when plaintiffs rely on conclusory allegations that a defendant participated in or influenced credit decisions.  *See, e.g.*, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 408 (6th Cir. 1998); *Ireland v. Centralbanc Mortg. Corp.*, No. 5:12-cv-02991, 2012 WL 4181418 (N.D. Cal. Sept. 18, 2012); *Webster Chrysler Jeep, Inc. v. Chrysler Holding LLC*, No. 08-CV-6535, 2010 WL 5185465 (W.D.N.Y. Dec. 13, 2010).

### 2.      Plaintiff Has Failed to Sufficiently Allege that Barclays Is Liable as an Alter Ego of Any Other Entity

Though never articulated expressly in the Complaint, Plaintiff nonetheless suggests that liability attaches to Barclays under an alter ego theory.  Pre-Motion Letter at 3.  Plaintiff makes the bare allegation that Barclays "exercised complete domination and control" of Sutton Funding and EquiFirst and was therefore the "alter ego" of both entities.  Compl. ¶¶ 50, 69.  In his Pre-

Motion Letter, Plaintiff also asserts that EquiFirst was "insufficiently capitalized," but cites to paragraphs in the Complaint that allege only that Barclays was EquiFirst's "principal financier." Pre-Motion Letter at 3 (citing Compl. ¶¶ 4, 63); *see* Conf. Tr. 10:1-20.

The Court should look to New York choice of law principles to determine the applicable alter ego doctrine.[11]  Under those principles, "the law of the state of incorporation determines when the corporate form will be disregarded."[12] *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014).  Barclays is incorporated under the laws of England, under which "[e]vidence of impropriety is a necessary condition to justify veil-piercing, but impropriety on its own is insufficient; the impropriety must be linked to the use of the company structure to avoid or conceal liability."  *In re Optimal U.S. Litig.*, No. 10 Civ. 4095, 2011 WL 4908745, at *3 (S.D.N.Y. Oct. 14, 2011).  Furthermore, the defendant must have "already incurred some liability to plaintiff at the time [it] interposed the corporate structure" — that is, the liability arose before the change in corporate structure. *In re Tyson*, 433 B.R. 68, 87-88 (S.D.N.Y. 2010).  "Accordingly, veil piercing is quite rare under English law." *Id.* at 86.[13]

In the alternative, if the Court determines that New York's alter ego doctrine should apply, "a court may pierce the corporate veil where (1) the owner exercised complete domination

---

[11]    Though it ultimately makes no difference due to the paucity of Plaintiff's allegations, the choice of law question is complex.  The Supreme Court has significantly curtailed federal common law, and therefore the use of federal choice of law rules, which "are a species of federal common law." *In re Gaston & Snow*, 243 F.3d 599, 606 (2d Cir. 2001).  "The ability of the federal courts to create federal common law and displace state created rules is severely limited." *Id.*  In order to justify the decision to fashion rules of federal common law the "guiding principle is that a significant conflict between some federal policy or interest and use of state law must first be specifically shown." *Atherton v. FDIC*, 519 U.S. 213, 218 (1997) (citation omitted).  There is no such conflict or significant interest here.  For this reason, and because Plaintiff also alleges New York state law claims, the Court should look to New York choice of law principles.
[12]    At the pre-motion conference, the Court asked whether a contractual choice of law provision would govern which jurisdiction's alter ego doctrine should be applied.  Conf. Tr. 7:9.  The Second Circuit has recently explained that it does not. *Blue Whale Corp. v. Grand China Shipping Development Co.*, 722 F.3d 488, 496 (2d Cir. 2013).  In any event, the mortgage designated New York law in its choice of law provision. *See* Loan Docs. at 16.
[13]    EquiFirst is not a direct subsidiary of Barclays; however, courts in the Second Circuit use the same analysis to determine alter ego liability for direct and indirect subsidiaries. *See, e.g.*, *Golub v. Kidder, Peabody & Co.*, No. 89-cv-5903, 2000 WL 1024688 (S.D.N.Y. July 25, 2000).

over the corporation with respect to the transaction at issue, *and* (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

No matter which jurisdiction's law applies, Plaintiff's allegations are inadequate to show that EquiFirst was Barclays' alter ego. Plaintiff is required to allege plausibly, and specifically, both that Barclays completely dominated its subsidiaries and that it used that domination to commit a fraud on the Plaintiff or to improperly avoid or conceal liability. "Conclusory allegations on one or both of these points are insufficient; a complaint must plead 'specific facts or circumstances' supporting them." *Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) (quoting *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) 87 F.3d 65, 70 (2d Cir. 1996)). Thus "[t]he Complaint [must] allege facts from which it may be inferred that" a parent dominated or controlled a subsidiary's operations, not mere conclusory statements that it did so. *De Jesus*, 87 F.3d at 70. Plaintiff must also allege "that there was … fraud or similar injustice inherent in the use of the corporate forms, separate from the alleged unfairness or injustice arising from this transaction" at issue. *VFS Fin., Inc. v. Falcon Fifty LLC*, --- F. Supp. 2d ----, No. 13 Civ. 3534, 2014 WL 1744496, at *7 (S.D.N.Y. Apr. 30, 2014); *see De Jesus*, 87 F.3d at 70.

Plaintiff wholly fails to allege alter ego liability. With regard to Sutton Funding, Plaintiff alleges that it was a subsidiary of, and had a business relationship with, Barclays, including in connection with a June 2007 securitization of EquiFirst loans.[14] Compl. ¶¶ 44-47. These allegations alone suggest no facts supporting control or domination.[15] Similarly, Plaintiff cannot state a valid claim that EquiFirst was an alter ego of Barclays. With regard to Barclays'

---

[14]   Plaintiff does not explain, however, the relevance of this securitization and does not allege that his loan was sold as part of that securitization.
[15]   In any event, Plaintiff does not allege that any of his injuries are traceable to the actions of Sutton Funding. Therefore, even if Plaintiff had sufficiently alleged that Sutton Funding was an alter ego of Barclays, neither entity could be liable under any of Plaintiff's causes of action.

relationship with EquiFirst, the Complaint alleges Barclays': (1) interest in acquiring EquiFirst because it engaged in subprime mortgage lending; (2) loans to EquiFirst; and (3) corporate relationship with EquiFirst.  *Id.* ¶¶ 62-68.  These allegations alone do not support that Barclays controlled EquiFirst or used it and their corporate relationship to purposefully commit fraud or avoid liability.  They are insufficient under the law of England or New York to pierce the corporate veil as they are "devoid of any factual enhancement."  *Iqbal*, 556 U.S. at 662.

### B.    Section 805 of the FHA and ECOA Do Not Permit Disparate Impact Claims

Plaintiff has also failed to state a claim under Section 805 of the FHA or ECOA because neither statute permits recovery under a disparate *impact* theory.  Instead, the language of each statute prohibits only the discriminatory *treatment* of applicants for credit.

The Second Circuit recognizes disparate impact claims under Section 804 of the FHA. *See Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934-35 (2d Cir. 1988). But Plaintiff does not assert a claim under Section 804 — which makes it unlawful to "refuse to sell or rent … or otherwise make unavailable … a dwelling."  42 U.S.C. § 3604(a).

Both Section 805, under which Plaintiff brings his FHA claim, and ECOA are characterized by narrower, and materially different language.  Though the Second Circuit has not addressed whether Section 805 or ECOA permit disparate impact claims, the reasoning of the Supreme Court interpreting analogous statutory language makes clear that these provisions protect only against disparate treatment.  *See* 42 U.S.C. § 3605(a); *cf. Boykin v. KeyCorp*, 521 F.3d 202, 207 n.3 (2d Cir. 2008) ("express[ing] no opinion on the pleading requirements for an FHA disparate impact claim" under Section 805).[16]

Unlike the language of Section 804, Section 805 and ECOA, prohibit, more narrowly,

---

[16]   A few district courts in this Circuit have assumed that one may bring disparate impact claims under ECOA and Section 805 of FHA.  *See, e.g.*, *Adkins*, 2013 WL 3835198; *Jones*, 2002 WL 88431.  Barclays respectfully notes that these courts all cite to other district court decisions, to Second Circuit decisions evaluating disparate *treatment* claims under FHA or ECOA, or to Second Circuit decisions evaluating disparate impact claims under Section 804 of the FHA, the ADEA, or other statutes.

"discrimination."  The difference in statutory language is important.  As the Supreme Court has

explained when considering similar textual differences between Title VI and Title VII of the

Civil Rights Act, and between different sections of the Age Discrimination in Employment Act

("ADEA"), one type of statutory construction permits disparate impact claims, and the other

does not.  *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 235 (2005).  Specifically, Section

703(a)(2) of Title VII prohibits a broad range of actions directed at employees that "deprive any

individual of employment opportunities *or otherwise adversely affect* his status as an employee,

because of such individual's race," and Section 4(a)(2) of the ADEA has broad and "identical

text."  *Id.* at 235-36 (emphasis in original).  But "key textual differences" between Section

4(a)(2) and Section 4(a)(1) of the ADEA, lead to the conclusion that the latter does *not* permit

disparate impact liability.  *Id.* at 235-36 & n.6 (internal quotations omitted).  Similarly, the

Supreme Court has found that Title VI of the Civil Rights Act, which does not have that broad

statutory language found in Title VII and Section 4(a)(2) of the ADEA, forbids only intentional

discrimination.  *Alexander v. Sandoval,* 532 U.S. 275, 280-81 (2001).

Neither FHA Section 805 nor ECOA include the prohibition of "adverse effects" such as

those relied on in *Smith* in permitting disparate impact claims.  The text of both Section 805 and

ECOA prohibit, simply, "*discrimination*" because of a protected status.  42 U.S.C. § 3605(a); 15

U.S.C. §1691(a).  The language of these statutes is thus similar to Section 4(a)(1) of the ADEA,

which does not permit claims relying on a disparate impact theory.  *Smith*, 544 U.S. at 236 n.6;

*see also Garcia v. Johanns*, 444 F.3d 625, 633 n.9 (D.C. Cir. 2006) (noting that ECOA's

language is distinguishable from that in Title VII, and declining to find that ECOA permits

disparate impact claims).  Thus, under *Smith* and *Alexander*, Section 805 and ECOA permit only

claims for disparate *treatment*.[17]

---

[17]   The Supreme Court has not considered whether any section of FHA or ECOA permit
disparate impact claims.  *See Inclusive Cmty. Project, Inc. v. Texas Dep't of Hous. & Cmty.
Affairs*, 747 F.3d 275, 281 n.4 (5th Cir. 2014); *Golden v. City of Columbus*, 404 F.3d 950, 963
n.11 (6th Cir. 2005).  But *Smith* counsels that Section 805 and ECOA do not permit such claims.

## IV.   PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE OR DECLARATORY RELIEF

In addition to damages, Plaintiff seeks injunctive and declaratory relief.  *See* Compl. at Prayer for Relief (i)-(iii).  But Plaintiff lacks standing to seek such relief.  "[A] plaintiff must demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000).

> To obtain *prospective* relief, … a plaintiff must show, *inter alia,* a sufficient likelihood that he [or she] will again be wronged in a similar way. … [A] plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought.

*Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (citations omitted).

Plaintiff cannot show any likelihood that the alleged wrongdoing here could injure him again in the future.  EquiFirst ceased originating loans in 2009.  *See* Barclays 6-K at 13. Plaintiff's counsel admitted that this fact "makes that argument [for prospective relief] harder." Conf. Tr. 18:13.  There is no way that EquiFirst, or Barclays "directing" EquiFirst, could cause future injury to Plaintiff.  Indeed, Plaintiff does not allege that he intends to obtain a new mortgage in the future or that any such mortgages would be purchased or securitized by, or in any manner connected to, Barclays.  Insofar as Plaintiff is concerned about the potential loss of his home, such injury would be traceable to the pending foreclosure action brought by Selene Financial, not any action of Barclays or its alleged affiliates.  Courts consistently hold that plaintiffs alleging housing or credit discrimination lack standing to seek injunctive relief in similar circumstances.  *See, e.g.*, *Vaughn v. Consumer Home Mortg. Co.*, 297 F. App'x 23, 26 (2d Cir. 2008); *Adkins*, 2013 WL 3835198, at *4.

## CONCLUSION

For the foregoing reasons, Barclays moves to dismiss the Complaint with prejudice.

25

Dated: August 28, 2014                    Respectfully submitted,

                                          /s/    David B. Bergman
                                          *David B. Bergman (david.bergman@aporter.com)
                                          Elliott C. Mogul (elliott.mogul@aporter.com)
                                          ARNOLD & PORTER LLP
                                          555 Twelfth Street, NW
                                          Washington, DC 20004-1208
                                          202.942.5474 (phone)
                                          202.942.5999 (fax)
                                          *admitted pro hac vice
                                          *Attorneys for Defendant Barclays Bank PLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2014, I caused the foregoing Memorandum of Law to be electronically filed via the Court's CM/ECF System, causing a true and correct copy to be served upon all counsel of record who are registered CM/ECF users.

/s/ Elliott C. Mogul
Elliott C. Mogul